STATE OF ALASKA, Plaintiff–Appellant,

v.

Bruce BABBITT, Secretary of the Interior, et al., Defendants–Appellees.

Katie JOHN, et al., Plaintiffs–Appellees,

v.

UNITED STATES of America, et al., Defendants–Appellants.

Nos. 94–35480, 94–35481.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1995.

Decided April 20, 1995.

Joanne M. Grace, Asst. Atty. Gen., Anchorage, AK, for plaintiff-appellant-plaintiffs-appellees.

Elizabeth Ann Peterson, U.S. Dept. of Justice, Washington, DC, for defendants-appellees-defendants-appellants, Robert T. Anderson, Native American Rights Fund, Anchorage, AK, defendant-appellee-plaintiff-appellee.

Richard L. Young, Albuquerque, NM, for Peratrovich, et al., as amici curiae.

Michael A.D. Stanley, Juneau, AK, and Marc D. Slonim, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, WA, for Peninsula Marketing Association, et al., as amici curiae.

Clive J. Strong, Deputy Atty. Gen., Boise, ID, for States of Ariz., Cal., Idaho, Mont., Nev., and Or., as amici curiae.

Carol H. Daniel, Alaska Legal Services Corp., Anchorage, AK, for Native Village of Quinhagak, et al., as amici curiae.

Before: WRIGHT, HALL and WIGGINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

These appeals arise from the efforts of Katie John, Doris Charles and the other upper Ahtna Athabaskan Indians of Mentasta Village to continue subsistence fishing at Batzulnetas as they and their ancestors have done since time immemorial.[1] The fishery at Batzulnetas lies near the confluence of Tanada Creek and the Copper River and within Wrangell–St. Elias National Park. They also involve the claim by the state of Alaska that the Secretaries of the Interior and Agriculture, on behalf of the federal government, are attempting to exercise too much control over fish and wildlife management within the state.

The Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. § 3101 et seq., requires that subsistence fishing and hunting be given a priority over other uses of fish and wildlife on "public lands." The sole issue remaining in this appeal concerns the meaning of the definition of public lands in § 102 of ANILCA. 16 U.S.C. § 3102.[2] Specifically, the parties dispute whether navigable waters fall within the statutory definition of public lands and are thus subject to federal management to implement ANILCA's subsistence priority.[3]

---

1. The following amici curiae also seek to continue subsistence fishing in particular navigable waters: the Peratrovich Plaintiffs whose ancestors fished in marine waters in the Alexander Archipelago and within the Tongass National Forest; the Tlingit, Haida and Tsimshian Indians of the Sitka Tribe whose ancestors also fished in marine waters; the Yup'ik Eskimos of the Villages of Quinhagak and Goodnews Bay whose ancestors fished at the mouths of the Kanektok and Goodnews Rivers; and the Native Alaskans of the Village of Elim and the Nome Eskimo Community whose ancestors fished along the coast of the Seward Peninsula in northern Norton Sound.

2. Another issue originally raised in this appeal was whether Title VIII of ANILCA authorizes the federal government to manage subsistence fishing and hunting on public lands in the absence of Alaska laws implementing the subsistence priority. The district court held that ANILCA does, in

fact, authorize the appropriate federal agencies to promulgate regulations if the state does not or cannot do so. After briefing was completed in this court, but before oral argument, the parties, including the state of Alaska, stipulated to the dismissal with prejudice of that issue. We accepted the stipulation.

The Alaska Legislature, angry with the Governor's directive to the Attorney General to stipulate to the dismissal, filed an emergency motion for intervention and, in the alternative, for substitution, or for stay. We denied its motion, concluding that the Legislature was not empowered under state law to intervene in the appeal.

In light of the dismissal with prejudice of that issue, the district court's holding on this issue stands.

3. As the parties do not dispute whether nonnavigable waters are public lands, we do not address that issue.

The district court adopted a highly expansive definition of public lands, holding that the subsistence priority applies to all Alaskan waters subject to the federal navigational servitude. We disagree. Instead, we hold that the subsistence priority applies to navigable waters in which the United States has reserved water rights. We hold also that the federal agencies that administer the subsistence priority are responsible for identifying those waters. We therefore reverse and remand to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

In 1958, Congress preserved aboriginal fishing rights in the Statehood Act. Act of July 7, 1958, Pub.L. 85–508, § 4, 72 Stat. 339. But in 1960, after assuming responsibility for fish and wildlife management, the state closed the fishery at Batzulnetas and other traditional subsistence fisheries. In 1971, Congress extinguished aboriginal fishing rights. 43 U.S.C. § 1603(b).

Congress expected that the state and the federal agencies would protect subsistence hunting and fishing. 1971 U.S.C.C.A.N. 2192, 2247, 2250. In 1980, frustrated with their failure to do so, Congress enacted ANILCA. Title VIII of ANILCA required that rural Alaska residents be accorded a priority for subsistence hunting and fishing on public lands. 16 U.S.C. §§ 3113, 3114. Pursuant to § 805(d) of ANILCA, 16 U.S.C. § 3115(d), Congress gave the state authority to implement the rural subsistence preference by enacting laws of general applicability consistent with ANILCA's operative provisions. In anticipation of ANILCA's passage, the state enacted laws consistent with Title VIII which gave rural residents a subsistence priority. In 1982, after Congress enacted ANILCA, the Secretary of the Interior certified the state to manage subsistence hunting and fishing on public lands.

Congress could not have anticipated the next chain of events. In 1989, the Alaska Supreme Court struck down the state act granting the rural subsistence preference as contrary to the Alaska state constitution. *McDowell v. Alaska,* 785 P.2d 1 (Alaska 1989). It stayed its decision to give the legislature an opportunity to amend the constitution or otherwise bring its program into compliance with ANILCA. The legislature, however, failed to act during either its regular or special session.

In 1990, the federal government withdrew Alaska's certification and took over implementation of Title VIII. The Secretary of the Interior, on behalf of all concerned federal agencies, published temporary subsistence management regulations that adopted a very narrow definition of public lands, explaining that "navigable waters generally are not included within the definition of public lands." 55 Fed.Reg. 27,114, at 27,115 (June 29, 1990). The final regulations did not differ significantly. *See* 57 Fed.Reg. 22,940, at 22,942 (May 29, 1992).

Katie John and the state brought separate actions against the federal agencies; Katie John challenged the regulations that provided that public lands excluded navigable waters and the state challenged the federal government's authority to regulate in this area at all. The district court ordered these actions consolidated and that other actions raising similar issues be jointly managed.[4] After consulting with counsel for the parties in the jointly managed cases, the district court decided to address the fundamental issue of whether navigable waters are public lands before resolving other issues.[5]

Katie John argued that public lands include virtually all navigable waters, by virtue of the federal navigational servitude. The state contended that public lands exclude navigable waters. Prior to oral argument

---

4. The jointly managed cases include: *Kluti Kaah Native Village of Copper Ctr. v. Alaska,* No. A90–0004–CV, *Fish & Game Fund v. Alaska Bd. of Fisheries,* No. A92–0443–CV, *Peratrovich v. United States,* No. A92–0734–CV, *Native Village of Stevens v. McVee,* No. A92–0567–CV, and *Native Village of Quinhagak v. United States,* No. A93–0023–CV.

5. The district court also characterized as fundamental the issue of whether ANILCA authorizes federal agencies to manage subsistence fishing and hunting on public lands in the absence of consistent Alaska laws. As discussed *supra* at note 2, that issue is not before us.

before the district court, the federal agencies agreed with the state. But at oral argument, those agencies modified their position, arguing that public lands include those navigable waters in which the federal government has an interest under the reserved water rights doctrine.

On cross-motions for summary judgment, the district court concluded that public lands include all navigable waters encompassed by the navigational servitude. Subsequently, the district court stayed its decision and certified for interlocutory appeal the issue of whether public lands include navigable waters.[6] Both the state and the federal agencies appeal.

## II. ANALYSIS

■ We consider two questions when we review an agency's construction of a statute that it administers. *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). First, we consider "whether Congress 'has directly spoken to the precise question at issue' either in the statute itself or in the legislative history." *Railway Labor Executives' Ass'n v. ICC*, 784 F.2d 959, 963 (9th Cir.1986) (quoting *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781). Second, if Congress has not directly spoken to that precise question, we consider "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

■ Under ANILCA, "the term 'public lands' means land situated in Alaska which ... are Federal lands." 16 U.S.C. § 3102(3). "The term 'Federal land' means lands the title to which is in the United States." 16 U.S.C. § 3102(2). And "[t]he term 'land'

means lands, waters, and interests therein." 16 U.S.C. § 3102(1). In other words, public lands are lands, waters, and interests therein, the title to which is in the United States. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 548 n. 15, 107 S.Ct. 1396, 1405–06, n. 15, 94 L.Ed.2d 542 (1987).

As noted above, the parties dispute whether navigable waters are public lands. At one extreme, the state maintains that ANILCA's definition of public lands excludes all navigable waters because the federal government does not hold title to them by virtue of the navigational servitude or the reserved water rights doctrine. At the other extreme are Katie John and amici curiae Peratrovich Plaintiffs who argue that all navigable waters are public lands. Katie John says this is so because the navigational servitude defines the scope of public lands. The Peratrovich Plaintiffs say this is so because, in ANILCA, Congress expressed its intent to exercise its Commerce Clause powers to regulate subsistence fishing in navigable waters.[7] In the middle are federal agencies contending that public lands include certain navigable waters, defined by the reserved water rights doctrine.[8]

ANILCA's language and legislative history indicate clearly that Congress spoke to the precise question of whether *some* navigable waters may be public lands. They clearly indicate that subsistence uses include subsistence fishing. *See, e.g.*, 16 U.S.C. § 3113. And subsistence fishing has traditionally taken place in navigable waters. Thus, we have no doubt that Congress intended that public lands include at least some navigable waters.[9]

Unfortunately, ANILCA's language and legislative history do not give us the clear direction necessary to find that Congress

---

6. Similarly, it certified the issue of whether ANILCA authorizes federal agencies to manage subsistence fishing and hunting on public lands in the absence of consistent Alaska laws for interlocutory appeal. *But see supra* at note 2.

7. In addition to their Commerce Clause argument, amici curiae Peratrovich Plaintiffs join in Katie John's navigational servitude argument.

8. In addition to their navigational servitude and Commerce Clause arguments, Katie John and amici curiae Peratrovich Plaintiffs alternatively

contend that the reserved water rights doctrine defines the scope of public lands.

9. Our interpretation of the term public lands in this case will not allow the United States to usurp state power over navigable waters elsewhere. ANILCA applies only to Alaska and our interpretation of its definition of public lands is necessary to give meaning to its purpose of providing an opportunity for a subsistence way of life.

spoke to the precise question of *which* navigable waters are public lands. ANILCA itself refers only to "lands, waters, and interests therein, the title to which is in the United States." It makes no reference to navigable waters. The legislative history is also unhelpful, containing only a single reference to navigable waters. *See* 126 Cong.Rec. 20278–80 (Nov. 12, 1980) (statement of Rep. Udall). Lacking clear direction, we must decide whether the federal agencies' conclusion that public lands include some navigable waters under the reserved water rights doctrine is based on a permissible construction of the statute.

### A. Navigational Servitude

■ The navigational servitude describes the paramount interest of the United States in navigation and the navigable waters of the nation. *United States v. Certain Parcels of Land,* 666 F.2d 1236, 1238 (9th Cir.1982). It derives from the Commerce Clause. *Kaiser Aetna v. United States,* 444 U.S. 164, 177, 100 S.Ct. 383, 391–92, 62 L.Ed.2d 332 (1979). It is "a concept of power, not of property." *Certain Parcels,* 666 F.2d at 1238 (citing *United States v. Twin City Power Co.,* 350 U.S. 222, 224–25, 76 S.Ct. 259, 260–61, 100 L.Ed. 240 (1956)).

We have held that the navigational servitude is not "public land" within the meaning of ANILCA because the United States does not hold title to it. *City of Angoon v. Hodel,* 803 F.2d 1016, 1027 n. 6 (9th Cir.1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 197, 98 L.Ed.2d 148 (1987). Contrary to the district court's opinion, the Supreme Court has not limited that holding. In *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987), the Court rejected the assertion that the Outer Continental Shelf (OCS) is not "Federal land" because the United States does not hold title to it. *Id.* at 548 n. 15, 107 S.Ct. at 1406 n. 15. The Court explained in dictum that, while the United States may not hold "title" to the OCS, it was hesitant to conclude that the United States did not have "title" to "any interests therein." *Id.* But its dictum indicates only that, while the United States may

not hold title to land, it may hold title to interests (e.g., mineral rights) in that land.

For this reason, we reject the argument that the navigational servitude is an "interest ... the title to which is in the United States," such that all navigable waters are public lands within the meaning of ANILCA.

### B. Commerce Clause

■ Neither the language nor the legislative history of ANILCA suggests that Congress intended to exercise its Commerce Clause powers over submerged lands and navigable Alaska waters. Although Congress explicitly invoked its authority under the Commerce Clause to protect and provide the opportunity for continued subsistence uses on the public lands, *see* 16 U.S.C. § 3111(4), its invocation of that authority is also consistent with an implicit reservation of waters under the reserved water rights doctrine.

Congressman Morris Udall inserted a statement in the Congressional Record that ANILCA's definition of public lands included all navigable waters throughout Alaska. *See* 126 Cong.Rec. 29260, 20278–80 (Nov. 12, 1980) (statement of Rep. Udall). He did so, however, after the Senate had passed ANILCA, after the House had finished debating it, and shortly before the House voted on it. His views deserve little weight. *See NLRB v. Fruit & Vegetable Packers & Warehouseman,* 377 U.S. 58, 66, 84 S.Ct. 1063, 1068, 12 L.Ed.2d 129 (1964) ("these statements could represent only the personal views of these legislators, since [they] were inserted in the Congressional Record after passage of the Act").

We reject the argument that Congress expressed its intent to exercise its Commerce Clause powers to regulate subsistence fishing in all Alaskan navigable waters.

### C. Reserved Water Rights

■ Under the reserved water rights doctrine, when the United States withdraws its lands from the public domain and reserves them for a federal purpose, the United States implicitly reserves appurtenant waters then unappropriated to the extent needed to ac-

complish the purpose of the reservation. *Cappaert v. United States,* 426 U.S. 128, 138, 96 S.Ct. 2062, 2069, 48 L.Ed.2d 523 (1976). The United States may reserve "only that amount of water necessary to fulfill the purpose of the reservation." *Id.* at 141, 96 S.Ct. at 2071. The United States' authority to reserve unappropriated waters derives from the Commerce Clause and the Property Clause. *Id.* at 138, 96 S.Ct. at 2069.

In determining whether the reserved water rights doctrine applies, we must determine whether the United States intended to reserve unappropriated waters. *Id.* at 139, 96 S.Ct. at 2069–70. Intent is inferred if those waters are necessary to accomplish the purposes for which the land was reserved. *Id.; United States v. New Mexico,* 438 U.S. 696, 702, 98 S.Ct. 3012, 3015, 57 L.Ed.2d 1052 (1978). It follows that courts must conclude that "without the water the purposes of the reservation would be entirely defeated." *Id.* at 700, 98 S.Ct. at 3014.

■ The United States has reserved vast parcels of land in Alaska for federal purposes through a myriad of statutes.[10] In doing so, it has also implicitly reserved appurtenant waters, including appurtenant navigable waters, to the extent needed to accomplish the purposes of the reservations. By virtue of its reserved water rights, the United States has interests in some navigable waters. Consequently, public lands subject to subsistence management under ANILCA include certain navigable waters.

For these reasons, we hold to be reasonable the federal agencies' conclusion that the definition of public lands includes those navigable waters in which the United States has an interest by virtue of the reserved water rights doctrine. We also hold that the federal agencies that administer the subsistence priority are responsible for identifying those waters.

### III. CONCLUSION

We recognize that our holding may be inherently unsatisfactory. By holding that public lands include some specific navigable waters as a result of reserved water rights, we impose an extraordinary administrative burden on federal agencies. We accept a complicated regulatory scheme requiring federal and state management of navigable waters. Let us hope that the federal agencies will determine promptly which navigable waters are public lands subject to federal subsistence management. As long as federal *and* state regulation is necessary, we expect the federal agencies and the state to cooperate fully to protect and provide the opportunity for subsistence fishing in navigable waters.

If we were to adopt the state's position, that public lands exclude navigable waters, we would give meaning to the term "title" in the definition of the phrase "public lands." But we would undermine congressional intent to protect and provide the opportunity for subsistence fishing.

If we were to adopt Katie John's position, that public lands include all navigable waters, we would give federal agencies control over all such waters in Alaska. ANILCA does not support such a complete assertion of federal control and the federal agencies do not ask to have that control.

The issue raised by the parties cries out for a legislative, not a judicial, solution. If the Alaska Legislature were to amend the state constitution or otherwise comply with ANILCA's rural subsistence priority, the state could resume management of subsistence uses on public lands including navigable waters. Neither the heavy administrative burden nor the complicated regulatory scheme that may result from our decision would be necessary. If Congress were to amend ANILCA, it could clarify both the definition of public lands and its intent. Only legislative action by Alaska or Congress will truly resolve the problem.

**REVERSED AND REMANDED.**

---

**10.** These statutes include, but are not limited to, acts reserving land for national parks, forests and wildlife preserves, the Statehood Act, the Alaska Native Claims Settlement Act and ANILCA itself.