*937 NGUYEN, Circuit Judge,
with whom Circuit Judge NELSON joins, concurring:
We are bound by our Katie John decisions to analyze this case under the reserved water doctrine. That is unfortunate. A reserved water right is the right to a sufficient volume of water for use in an appropriate federal purpose. See John v. United States (Katie John III), 720 F.3d 1214, 1226 (9th Cir. 2013) (“[Ajpplications of the federal reserved water rights doctrine have focused on the amount of water needed for a specific federal reservation, rather than the locations of water sources that might generally be needed...This case has nothing to do with that. Rather, it is about the right to regulate navigation on navigable waters within an Alaska national preserve. That is a Commerce Clause interest and should be analyzed as such.
Alaska v. Babbitt (Katie John I), 72 F.3d 698 (9th Cir. 1995), expressed two concerns with analyzing regulatory issues under the navigational servitude or, more generally, the Commerce Clause. One concern was that by treating the federal government’s power to regulate under the Commerce Clause as an interest in water, we render ANILCA’s definition of Federal lands meaningless because the United States cannot have “title to” such an interest. 72 F.3d at 704. But that is no less true of the United States’ ability to have “title to” a reserved water right. See John v. United States (Katie John II), 247 F.3d 1032, 1047 (9th Cir. 2001) (Kozinski, J., dissenting) (“[A] usufructuary right does not give the United States title to the waters or the lands beneath those waters.”). And treating either interest—a navigational servitude or a reserved water right—as a property interest to which the United States holds title is a reasonable interpretation of the statute. The Supreme Court has referred to navigable waters as “the public property of the nation” insofar as “[t]he power to regulate commerce comprehends [federal] control for that purpose, and to the extent necessary.” United States v. Rands, 389 U.S. 121, 123, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967) (quoting Gilman v. City of Philadelphia, 70 U.S. (3 Wall.) 713, 724-25, 18 L.Ed. 96 (1865)).
Katie John Ts textual concern misses a larger point: even if the federal interest in navigable waters under the Commerce Clause is not a property right at all, it is a power “paramount to ... proprietary rights of ownership, or the rights of management, administration, leasing, use, and development of the lands and natural resources [of] the respective States.” 43 U.S.C. § 1314(a); see also New Eng. Power Co. v. New Hampshire, 455 U.S. 331, 338 n.6, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982) (‘Whatever the extent of the State’s proprietary interest in the river, the pre-eminent authority to regulate ... resides with the Federal Government.”). The proper exercise of the Commerce Clause power is “not an invasion of any private property rights in the stream or the lands underlying it.” United States v. Cherokee Nation of Okla., 480 U.S. 700, 708, 107 S.Ct. 1487, 94 L.Ed.2d 704 (1987) (quoting Rands, 389 U.S. at 123, 88 S.Ct. 265). Thus, whether the navigational servitude is “public land” or not is irrelevant. ANILCA expressly left in place federal jurisdiction to regulate the navigable waters. See 16 U.S.C. § 3207 (“Nothing in this Act shall be construed as limiting or restricting the power and authority of the United States or ... as expanding or diminishing Federal or State jurisdiction, responsibility, interests, or rights in water resources development or control....”).
Katie John I's other concern was that reliance on the Commerce Clause would allow “a complete assertion of federal control” over “all [navigable] waters in Alaska.” 72 F.3d.at 704. But the United States’ *938 power to regulate activity within the sphere of federal interests on navigable waters is not an exclusive right. States may regulate their waterways to the extent their regulations do not conflict with federal ones. See Barber v. Hawai'i, 42 F.3d 1185, 1191 (9th Cir. 1994) (“The purpose of [the Submerged Lands Act] was not for the Federal Government to retain exclusive jurisdiction over navigation of the waters above the submerged lands, but for the Federal Government to retain concurrent jurisdiction over those waters.”); see also Courtney v. Goltz, 736 F.3d 1152, 1160 (9th Cir. 2013) (holding that states may regulate business franchises on navigable waters so long as they do not “encroach on the federal commerce power”).
Although Katie John I purported to eschew the Commerce Clause as a source of federal regulatory power, it conceded that the reserved water rights doctrine originates in part in the Commerce Clause. 72 F.3d at 703 (citing Cappaert v. United States, 426 U.S. 128, 138, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976)). In fact, the doctrine arises solely from the Commerce Clause insofar as Alaska’s navigable waters are concerned. The doctrine’s other source, the Property Clause, merely “permits federal regulation of federal lands.” Cappaert, 426 U.S. at 138, 96 S.Ct. 2062 (citing U.S. Const. art. IV, § 3). Alaska’s navigable waters are not federal lands in the usual (non-ANILCA) sense because the riverbeds by default now belong to Alaska. It is the Commerce Clause that “permits federal regulation of navigable streams” regardless of who owns the land beneath. Id. (citing U.S. Const. art. I, § 8).
Katie John I described its own holding as “inherently unsatisfactory.” 72 F.3d at 704. We have since criticized it as a “problematic solution to a complex problem, in that it sanctioned the use of a doctrine ill-fitted to determining which Alaskan waters are ‘public lands.’” Katie John III, 720 F.3d at 1245. I could not agree more.
I would adopt the well-reasoned approach set forth in Judge Tallman’s concurrence to Katie John II. Rather than continuing to shove a square peg into a hole we acknowledge is round, we should embrace a Commerce Clause rationale for federal regulation of Alaska’s navigable waters.