**THE ALASKA LEGISLATIVE COUNCIL, et al., Plaintiffs,**

v.

**Bruce BABBITT, Secretary of the Interior, et al., Defendants.**

**No. CIV. A. 98–0069 JR.**

United States District Court, District of Columbia.

July 24, 1998.

Robin W. Grover, Michael, Best & Friedrich, Chicago, IL, Mark L. Pollot, Boise, ID, for Plaintiffs.

Dean K. Dunsmore, U.S. Department of Justice, Environment and Natural Resources Division General Litigation Section, Anchorage, AK, Gary B. Randall, Acting Assistant

Chief, U.S. Department of Justice, Environment and Natural, Resources Division, General Litigation Section, Washington, DC, for Defendants.

### *MEMORANDUM*

ROBERTSON, District Judge.

Plaintiffs, the Alaska Legislative Council and certain members of the Alaska State Legislature suing in their capacities both as legislators and as residents of Alaska, bring three challenges to federal implementation of Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. §§ 3111–3126. They seek declaratory and injunctive relief against any implementation of ANILCA that, as they see it, would violate the Commerce Clause, U.S. Const. Art. I, § 8, Cl. 3, the Property Clause, U.S. Const. IV, § 3, Cl. 2, and the Tenth and Eleventh Amendments (First Claim for Relief); the Equal Protection component of the Fifth Amendment (Second Claim for Relief); and the Administrative Procedure Act (APA) (Third Claim for Relief).

Before the court is defendants' motion to dismiss, asserting that plaintiffs' claims are barred by, *inter alia,* the statute of limitations, the doctrine of *res judicata,* lack of standing, and ripeness. The motion will be granted for the reasons set forth below.

### *BACKGROUND*

Congress enacted Title VIII of ANILCA in 1980 to respond to a perceived failure on the part of the State of Alaska and federal authorities to protect subsistence hunting and fishing in Alaska. Title VIII requires that rural Alaska residents who wish to make non-wasteful subsistence use of fish and wildlife on public lands be given a priority to continue such use. Recognizing that fish and game regulation has traditionally been a prerogative of the State, however, Congress authorized the federal government to implement ANILCA's subsistence priority only if Alaska failed to enact laws of general applicability consistent with ANILCA.

The State of Alaska, which has consistently and vehemently opposed a federal takeover of wildlife management within its borders, had already enacted such legislation. In 1982, the Secretary of the Interior certified Alaska's legislation as sufficient to stay federal implementation of ANILCA, and the state began to enforce the subsistence priority. That state of affairs continued until 1989, when the Alaska Supreme Court ruled that the state legislation creating the rural subsistence priority violated the state Constitution. *McDowell v. Alaska,* 785 P.2d 1 (Alaska 1989). Legislative remedies were thereafter proposed but not enacted. In 1990, the federal government began to implement Title VIII itself.

The instant lawsuit is but the latest in a series of actions challenging the federal implementation of Title VIII: The others were litigated in the United States District Court for the District of Alaska and the United States Court of Appeals for the Ninth Circuit. The two main challenges, *State of Alaska v. Babbitt* and *Katie John v. United States,* were consolidated before Judge Russell Holland in the District of Alaska. The plaintiff in *Alaska v. Babbitt* challenged the authority of the Secretary of the Interior to implement the subsistence priority, which he had done by regulation after finding the state to be in noncompliance with Title VIII following the Alaska Supreme Court's decision in *McDowell.* The plaintiffs in *Katie John,* subsistence users of a fishing camp located along navigable waters in the Wrangell–St. Elias National Park, challenged the exclusion of navigable waters from the federal scheme, arguing that ANILCA defined "public lands" subject to the priority to include all navigable waters.

Judge Holland rejected the challenge to federal implementation by the State of Alaska, ruling that "the Secretary [of the Interior], not the State of Alaska, is entitled to manage fish and game on public (federal) lands in Alaska for purposes of Title VIII of ANILCA." *John v. United States,* 1994 WL 487830, *9 (D.Alaska, Mar. 30, 1994). The Ninth Circuit resolved the question raised by the *Katie John* plaintiffs, holding that "public lands subject to subsistence management under ANILCA include certain navigable waters," specifically those over which the United States has reserved water rights, but not

all navigable waters. *State of Alaska v. Babbitt,* 72 F.3d 698, 703 (9th Cir.1995), *cert. denied,* 517 U.S. 1187, 116 S.Ct. 1672, 134 L.Ed.2d 776 (1996).[1] (The Ninth Circuit reached only the "navigable waters" issue raised by the *Katie John* plaintiffs because the state stipulated to the dismissal with prejudice of its appeal on the issue of federal authority to implement the subsistence priority. *See* 72 F.3d at 700 n. 2.)

Plaintiffs brought this new challenge to the federal government's authority in an apparent attempt to avoid the Hobson's choice between amending Alaska's Constitution to permit state implementation of the subsistence priority and suffering federal government implementation. Defendants immediately moved to transfer the case to Alaska, where Judge Holland was already familiar with ANILCA and had a similar case pending on his docket. Plaintiffs in that pending case, however, voluntarily dismissed their suit, and thereafter, because plaintiffs in this action had chosen a proper forum (though perhaps not the most logical one), the motion to transfer was denied.

The defendants then filed the instant motion dismiss.[2] They sought expedited consideration because the Alaska Legislature was about to convene for the purpose, among other things, of considering a constitutional amendment.

### *ANALYSIS*

*1. First claim for relief*

■ The first count of the Amended Complaint alleges that Congress exceeded its authority under the Commerce Clause, the Property Clause, the Enumerated Powers Doctrine, and the Tenth and Eleventh Amendments. Defendants move to dismiss on the theory that, because these claims could have been litigated in *Alaska v. Babbitt,* plaintiffs are barred by the doctrine of claim preclusion from bringing them now.

The doctrine of claim preclusion provides that

> when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (internal quotations and citations omitted); *see also Rivet v. Regions Bank of Louisiana,* —— U.S. ——, ——, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) (same). Enforcement of the doctrine is necessary to "secure the peace and repose of society by the settlement of matters capable of judicial determination." *Nevada v. United States,* 463 U.S. at 129, 103 S.Ct. 2906. Indeed, "[t]he policies advanced by the doctrine of *res judicata* are perhaps at their zenith in cases concerning real property, land and water.... Such decisions become rules of property, and many titles may be injuriously affected by their change." *Id.* 463 U.S. at 129 n. 10, 103 S.Ct. 2906 (internal quotations and citation omitted). In order to preclude plaintiffs' claims in this forum, defendants must show, first, that the claims were brought or could have been brought in *Alaska v. Babbitt,* and, second, that plaintiffs are in privity with the State for purposes of claim preclusion.

The first question is not difficult. In Count III of *Alaska v. Babbitt* "[t]he State raise[d] the fundamental question: does the Secretary have specific authority to adopt a comprehensive scheme for fish and wildlife management on 'public lands' as defined in Section 102 of ANILCA?" *John v. United States,* 1994 WL 487830 at *5. The State did not articulate the same broad Constitutional theories in that case as are pleaded in this one, but challenges based on the Commerce

---

1. For a detailed history of Title VIII and the litigation challenging federal implementation of the rural subsistence use priority, see Judge Holland's consolidated opinion in *John v. United States* and *Alaska v. Babbitt,* 1994 WL 487830, and the Ninth Circuit's opinion in both cases, 72 F.3d 698.

2. Defendants presented matters outside the pleadings with their motion to dismiss, but those materials have been excluded from consideration pursuant to F.R.C.P. 12(b).

Clause, the Property Clause, and the Tenth and Eleventh Amendments *could have been* presented in that action. Judge Holland's ruling against the State in that action is now final. *See John v. United States,* No. A90–484CV (HRH) (D.Alaska, Feb. 13, 1998), appended to Motion to Dismiss as Exhibit 3, (dismissing Count III of *Alaska v. Babbitt* with prejudice); *see also Alaska v. Babbitt,* 72 F.3d at 700 n. 2 ("the district court's holding on this issue stands.")

The privity question is controlled by the "common public rights" doctrine enunciated by the Supreme Court in *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 340–41, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958), *Wyoming v. Colorado,* 286 U.S. 494, 508–09, 52 S.Ct. 621, 76 L.Ed. 1245 (1932) and *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n,* 443 U.S. 658, 692 n. 32, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979). In *City of Tacoma,* the Court explained that a final judgment on the merits in a prior case to which the State of Washington was a party "was effective, not only against the State, but also against its citizens ... for they, in their common public rights as citizens of the State, were *represented by the State* in those proceedings, and, like it, were bound by the judgment." 357 U.S. at 340–41, 78 S.Ct. 1209 (emphasis added). In *Wyoming v. Colorado,* the doctrine was applied to litigation over water rights by individuals: "water claimants in Colorado, and those in Wyoming, were *represented by their respective states* and are bound by the decree." 286 U.S. at 509, 52 S.Ct. 621 (emphasis added). The claims at issue in plaintiffs' first claim for relief—the authority of the Federal Government to regulate fish and game on public lands under the Commerce Clause, the Property Clause, and the Tenth and Eleventh Amendments—are plainly "common public rights," and these plaintiffs were represented by the State in, and bound by the result of, *Alaska v. Babbitt.*

■] Plaintiffs suggest two "exceptions" to the rule of claim preclusion, but neither of them alters the result. First, they argue

that separation of powers principles require a finding that the interests of the Alaska Legislative Council and of individual legislators suing as legislators are necessarily different from the interests of Alaska's Attorney General, who litigated *Alaska v. Babbitt* on behalf of the State. The argument relies on the well-settled concept that one coequal branch of government may sue another. Resp. at 19. Such actions, however, involve infringement by one branch upon the prerogatives of the other. Plaintiffs offer no authority for the proposition they advance here, which is that one branch may sue another over "common public rights" of the State and its citizens.

Plaintiffs' second proposed "exception" to the claim-preclusive effect of *Alaska v. Babbitt* is that, because of intervening case law, they should now be permitted to bring Constitutional challenges that may not have been brought in the State's earlier case because they seemed less viable then. Specifically, they assert that *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *Printz v. United States,* — U.S. ——, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), shed new light on the Constitutional validity of Title VIII. The answer to this point is that, even if the *res judicata* effect of settled land use issues can be defeated by intervening law, neither *Lopez* nor *Printz* is intervening law. *Lopez* invalidated a statute that relied for its validity solely upon the Commerce Clause; ANILCA relies also (and perhaps mainly) on the Property Clause for its validity. *Printz* invalidated a statute that commanded a state to enforce a federal law; ANILCA gives Alaska the option of enacting and enforcing a subsistence priority but does not require it to do so.

## 2. Second claim for relief

■] The second count of the Amended Complaint asserts that ANILCA's rural subsistence use priority violates the equal protection component of the Fifth Amendment by discriminating between Alaska residents based on their place of residence.[3] Defen-

---

3. The second claim for relief also asserts violations of the Ninth and Tenth Amendments, *see* First Amended Complaint, ¶ 82. To the extent

that it relies on those theories, the second claim is barred by claim preclusion as discussed in Part 1, *supra.*

dants do not seriously contend that this claim invokes a "common public right" of the State and its citizens for claim preclusion purposes, nor is it even clear that this claim could have been brought by the State. Instead, defendants assert that plaintiffs' second claim for relief is a facial challenge to ANILCA that is barred by the six year statute of limitations applicable to civil actions against the United States.[4] *See* 28 U.S.C. § 2401(a); *see also Block v. North Dakota,* 461 U.S. 273, 282, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (§ 2401(a) applies to constitutional claims). Plaintiffs, for their part, acknowledge the statute of limitations but insist that their equal protection claim challenges amendments to ANILCA and regulations under ANILCA that were enacted or issued within six years of the date they commenced this action. They point out that: 1) Congress amended ANILCA in 1997 to provide new definitions relevant to the Title VIII subsistence scheme; 2) the Department of the Interior issued its final regulations implementing ANILCA less than six years prior to the filing of this action; and 3) the Department has renewed its "annual regulations" under ANILCA every year for the past six years.

What plaintiffs do not allege or assert, however, is that the classification between rural and non-rural residents that they seek to challenge flows from any of these actions, rather than from ANILCA itself.[5] Absent such a claim or showing, it cannot be said that the claims brought in the second count of the Amended Complaint accrued within six years of the commencement of this action. *See Mason v. Judges of the United States Court of Appeals,* 952 F.2d 423, 425 (D.C.Cir. 1991) (statute of limitations under § 2401 begins to run when the "right of action," determined by reference to the "gravamen of the complaint," "first accrued"), *cert. denied,* 506 U.S. 829, 113 S.Ct. 92, 121 L.Ed.2d 54

(1992). The claim that Title VIII, on its face, violates equal protection principles by arbitrarily discriminating between Alaska residents based on their place of residence accrued when Congress first enacted ANILCA. *See* 16 U.S.C. § 3114(a) ("such priority shall be implemented ... based on the application of the following criteria: ... (2) local residency"). The "gravamen" of plaintiffs' facial challenge to the regulations is a challenge to ANILCA itself. That claim is time-barred.

■ Plaintiffs submit, however, that their challenge is also an as-applied challenge to the regulations, or perhaps some admixture of a facial and an as-applied challenge, and they contend that cases such as *Dunn–McCampbell Royalty Interest, Inc. v. National Park Service,* 112 F.3d 1283 (5th Cir. 1997), and *Wind River Mining Corp. v. United States,* 946 F.2d 710 (9th Cir.1991), recognize their right to bring such a challenge in a case such as this. *Dunn–McCampbell* recognized the "proposition that an agency's application of a rule to a party creates a new, six-year cause of action to challenge to [sic] the agency's constitutional or statutory authority," but noted that "[t]o sustain such a challenge, ... the claimant must show some direct, final agency action involving the particular plaintiff within six years of filing suit." 112 F.3d at 1287.

Plaintiff's as-applied argument is defeated, however, by *Dunn–McCampbell* itself: the plaintiffs in that case sought review of mineral regulations promulgated more than six years prior to the commencement of their suit on the theory that "the severity of the [ ] regulations has deterred oil companies from leasing these mineral rights. They contend that such chilling is remediable in this court." 112 F.3d at 1286. The court rejected plaintiff's argument that the presence of such as-yet-unenforced regulations permitted as-ap-

---

4. Although plaintiffs' first claim will be dismissed on claim preclusion grounds, defendants also move to dismiss it on statute of limitations grounds. The analysis of the statute of limitations as it applies to the second claim for relief applies equally to plaintiffs' first claim and provides an alternative basis on which to grant defendant's motion to dismiss the first claim.

5. The complaint asserts that "even to the extent that ANILCA can be read to avoid this [equal protection] problem, the manner in which it has been implemented ... violates the equal protection component both on its face and as applied." First Amended Complaint, ¶ 83. That "even if" argument, however, does not change the fact that the rural priority plaintiffs seek to challenge is required by the statute itself. *See* 16 U.S.C. § 3114(a)(2).

plied review: "If Dunn–McCampbell were able to point to such an application of the regulations here [that is, a "final agency action involving the particular plaintiff"], . . . this court might have jurisdiction to hear the case." 112 F.3d at 1287–88.[6] Plaintiffs in this case have also failed to identify a "final agency action involving" themselves—such as an enforcement action against a named plaintiff. Their "as-applied" challenge to the ANILCA regulations is, therefore, not ripe for review.

■ Finally, to the extent plaintiffs argument is that the 1997 amendments to ANILCA, or the final implementing regulations, or the annual regulations, "reopened" the local residency distinction made by ANILCA itself, the argument cannot be sustained. There is no allegation that the 1997 amendments are at variance with the statute's command that the subsistence use priority be implemented using, *inter alia*, "local residency" as a criterion. Plaintiffs do not claim that the record of the DOI's rulemaking would show a "reopening" of the residency criterion, nor indeed do they make any serious attempt to demonstrate the application of the "reopener" doctrine as it is applied in this circuit. *See Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 920 (D.C.Cir.1998) (new challenge created by republication of existing rule only where " 'an agency's actions show that it has not merely republished an existing rule . . . but has reconsidered the rule and decided to keep it in effect' ") (quoting *Public Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 150 (D.C.Cir.), *cert. denied sub nom. Nuclear Management & Resources Council v. Public Citizen*, 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990)).

## 3. *Third claim for relief*

■ Plaintiffs' third claim for relief is an Administrative Procedure Act challenge to any implementation of Title VIII that would conflict with the statute itself. The complaint identifies three actions that plaintiffs believe are unauthorized by ANILCA: the assertion of jurisdiction over lands "validly selected by the State or other named parties" for transfer of title from the federal government, First Amended Complaint, ¶ 87;[7] the assertion of jurisdiction over lands to which the United States holds only a reserved water right, *id.* ¶ 88; and, to the extent that ANILCA does apply to lands in which the United States has only a reserved water right, the assertion of such jurisdiction over any land absent evidence that the United States holds such a right, *id.* ¶ 90. Specifically, plaintiffs assert that any "attempt to make rules which: (a) are intended to incorporate 'reserved water rights' in navigable waters and/or (b) include or are intended to include lands selected under the Statehood Act or other laws but to which title has not passed, is improper on its face and can be prohibited." *Id.* ¶ 91. Defendants contend, and are correct, that this claim is not ripe for judicial review.

Plaintiffs have not identified in their pleadings, in their motion papers, or at oral argument, a single existing regulation that they seek to challenge in their third claim for relief. Current subsistence regulations do not assert jurisdiction over lands described in the third claim for relief: they include only lands, waters and interests therein to which the United States holds title, and they specifically exclude lands selected by Alaska or Native Corporations but not yet conveyed. *See* 36 C.F.R. § 242.4 ("public lands" subject to Title VIII means "lands situated in Alaska which are Federal lands," excepting lands

---

6. The *Dunn–McCampbell* court alluded to another avenue of review that might have been available had the party petitioned the agency to review, amend or rescind its rule and then challenged the denial of that petition. *See NLRB Union v. FLRA*, 834 F.2d 191, 196 (D.C.Cir. 1987). Such review, however, is not available on the facts of this case. In any event, it would be limited to APA review of the denial to review, amend or rescind the regulations, rather than a review of the regulations themselves.

7. This is a reference to the Alaska Statehood Act, Pub.L. No. 85–508, 72 Stat. 339, 340, and to the Alaska Native Corporations Native Claim Settlement Act, Pub.L. No. 92–203, 85 Stat. 588, 701. The former allowed the state to select a certain quantity of land to be transferred to it from the United States, and the latter allowed Native Corporations to do the same.

selected by the State or a Native Corporation; "federal lands" means "lands and waters and interests therein the title to which is in the United States.") Plaintiffs allege in their First Amended Complaint that a "final determination" has been made to assert further jurisdiction in a way that would conflict with ANILCA, but they assert only that "defendants have commenced a new rulemaking...." ¶ 63. In essence, plaintiffs argue that this rulemaking, though it has yet to be completed, is pre-determined to include an assertion of jurisdiction over lands that plaintiffs believe cannot properly be regulated under Title VIII. Defendants do not dispute that proposed regulations have been published that "would significantly expand the asserted jurisdiction under Title VIII." Mot. to Dismiss at 21. Under a Congressional moratorium, however, defendants are precluded from implementing these regulations, even if they were prepared to do so, until December 1, 1998. *See* Pub.L. No. 105–83.

■ Under the APA, federal courts are permitted to review only "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. To determine whether an action is "final" for the purpose of APA review, courts ask whether the impact of the action "is sufficiently direct and immediate" and has a "direct effect on ... day-to-day business." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Plaintiffs have not attempted to show that the proposed regulations of which they complain have such a direct impact on their day-to-day affairs, nor could they. They assert, instead, that judicial review is appropriate under the futility exception to the final agency action requirement. Such an argument, however, must fail in light of the fact that the regulations are still subject to agency review prior to implementation, and the fact that the agency is currently forbidden by statute from implementing them.[8]

---

8. Plaintiffs also cite the Declaratory Judgment Act as authority for the proposition that finality is not required in this case. That argument, however, fails. *See Continental Bank & Trust Co. v. Martin,* 303 F.2d 214, 215 (D.C.Cir.1962) ("if the agency's action is not final so as to be reviewable

An appropriate order accompanies this memorandum.

### *ORDER*

Upon consideration of defendants' motion to dismiss, the opposition thereto, oral argument, and for the reasons stated in the accompanying memorandum, it is this 24th day of July, 1998

**ORDERED** that defendants' motion to dismiss [# 23] is **Granted.**

under the [APA], appellant is not helped on the question of jurisdiction by the Declaratory Judgment Act"); *see also Riker Laboratories, Inc. v. Gist–Brocades N.V.,* 636 F.2d 772, 779 (D.C.Cir. 1980) (same).