The ALASKA LEGISLATIVE
COUNCIL, et al.,
Appellants,

v.

Bruce BABBITT, Secretary, United
States Department of the Interior,
et al., Appellees.

No. 98–5405.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 8, 1999.

Decided July 13, 1999.

Rehearing En Banc Denied
Sept. 16, 1999.*

* Circuit Judge Wald did not participate in this matter.

Mark L. Pollot argued the cause for appellants. With him on the briefs was Robin W. Grover.

Elizabeth Ann Peterson, Attorney, U.S. Department of Justice, argued the cause for the federal appellees. With her on the brief were Lois J. Schiffer, Assistant Attorney General, David C. Shilton and Dean K. Dunsmore, Attorneys.

Robert C. Erwin was on the brief for amici curiae Dale Bondurant, et al.

Walter T. Featherly was on the brief for amici curiae Mary Bishop, et al.

Before: WALD, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The Alaska Legislative Council is a "permanent interim committee and service agency of the legislature." *See* ALASKA STAT. § 24.20.010 (Michie 1996). It is "composed of the president of the senate and six other senators appointed by the president, and the speaker of the house of representatives and six other representatives appointed by the speaker." *See id.* § 24.20.020. In January 1998, the Council and seventeen individual members of the Alaska State Legislature, in their capacities as legislators and as individuals, brought a complaint in the district court objecting to the Alaska National Interest Lands Conservation Act and the actions of the federal government thereunder.

The complaint, which sought declaratory and injunctive relief, focused on the federal management of subsistence taking of fish and wildlife on federal public lands in Alaska pursuant to the Lands Conservation Act. Of the individual plaintiffs, two claimed they ate fish and game from Alaska, two alleged they engaged in fishing, two alleged they engaged in hunting, eleven said they hunted and fished in the State; all claimed that the defendants' actions would adversely affect their hunting or fishing or their consumption of fish and game. The Lands Conservation Act, according to the complaint, infringes on State prerogatives in violation of the Commerce Clause, the Enumerated Powers Doctrine and principles of federalism embodied in the Tenth and Eleventh Amendments to the United States Constitution; the Act's rural subsistence use priority violates the equal protection component of the due process clause of the Fifth Amendment to the United States Constitution, because it discriminates between users of land on the basis of residency; and the federal government's implementation of

the Act violates the Administrative Procedure Act. *See Alaska Legislative Council v. Babbitt,* 15 F.Supp.2d 19, 21 (D.D.C. 1998).

Several years before the Council filed its action here, the State of Alaska brought a complaint raising similar allegations. *See Katie John v. United States,* 1994 WL 487830 at *5 (D.Alaska Mar.30, 1994). On its own motion, the district court in Alaska concluded that the State's complaint was without merit and dismissed it. *See id.* at *9. The State filed a notice of appeal, but later stipulated to a dismissal with prejudice. *See State of Alaska v. Babbitt,* 72 F.3d 698, 700 n. 2 (9th Cir.1995). The Ninth Circuit denied the motion of the Alaska State Legislature to intervene or to substitute itself as the appellant. *See id.*

In view of these earlier proceedings, the district court dismissed this complaint on the ground of res judicata, and also on the grounds that the statute of limitations had run on certain claims and that others were not ripe. *See Alaska Legislative Council,* 15 F.Supp.2d at 22–23, 24, 26. We affirm, but not entirely for the reasons given by the district court.

I

A

The initial question, which we decide against the plaintiffs, is whether the district court had jurisdiction to adjudicate the constitutional and statutory claims of the Council and of the individual legislators, in their official capacity, regarding the Act's creation of a hunting and fishing "priority" for rural subsistence users on federal public lands in Alaska, and the federal defendants' implementation of the Act. To understand why we believe the court could not hear this aspect of the case—why, that is, the plaintiffs lacked standing—it is necessary first to offer a brief description of the Alaska National Interest Lands Conservation Act.

Enacted in 1980, the Lands Conservation Act had as one of its stated purposes to maintain "sound populations of, and habitat for, wildlife species of inestimable value to the citizens of Alaska and the Nation," and to "provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so." *See* Alaska National Interest Lands Conservation Act, Pub.L. No. 96–487, 94 Stat. 2374 (1980), 16 U.S.C. § 3101(b), (c). To this end, the Act established a priority for "the taking on public lands of fish and wildlife for nonwasteful subsistence uses ... over the taking on such lands of fish and wildlife for other purposes." *See* 16 U.S.C. § 3114(a). The Act defined "subsistence uses" as the "customary and traditional uses ... of wild, renewable resources for direct personal or family consumption," by "rural Alaska residents"—those persons who reside in communities or areas that are "substantially dependent on fish and wildlife for nutritional and other subsistence uses." *See* 16 U.S.C. § 3113. If it became necessary to limit subsistence taking of fish and game, the Act provided that the priority would be implemented through limitations "based on the application of the following criteria: (1) customary and direct dependence upon the populations as the mainstay of livelihood; (2) local residency; and (3) the availability of alternative resources." *See* 16 U.S.C. § 3114(a).

The Act applied to federal public lands in Alaska, that is, to lands "the title to which is in the United States." *See* 16 U.S.C. § 3102(2), (3). Public lands, as defined in the Act, do not include "land selections of the State of Alaska which have been tentatively approved or validly selected under the Alaska Statehood Act[1] and lands which have been confirmed to, validly selected by, or granted to the Territory of Alaska or the State under any other provision of Federal law." *See* 16 U.S.C. § 3102(3)(A).

The Act authorized the State of Alaska to "assume management for the taking of fish and wildlife on the public lands for subsistence uses pursuant to this title," on condition that the State enacted and implemented laws of general applicability consistent with the Act's subsistence use priority, definitions and local and regional participation requirements. *See* 16 U.S.C. § 3115(d)(1). As of 1978, the State of Alaska had adopted a statute giving "subsistence uses ... priority over sport and commercial uses." *See Madison v. Alaska Dep't of Fish & Game*, 696 P.2d 168, 170–71 (Alaska 1985). Subsistence uses were defined as "customary and traditional uses ... for direct personal or family consumption." *See id.* at 170. Limiting criteria contained in regulations promulgated by the Alaska Board of Fisheries determined subsistence users by their area of residence. *See id.* at 172 n. 8, 174. On May 14, 1982, after the Secretaries of the Interior and Agriculture reviewed and approved the State's regulatory ¯ Alaska became responsible for all regulation of subsistence uses of its wild renewable resources.

In February 1985, the Supreme Court of Alaska invalidated the Board's limiting criteria as inconsistent with state law. *See Madison*, 696 P.2d at 178. The Interior Secretary then withdrew certification of the State's regulatory scheme. When the State later amended its legislation to limit subsistence use to use by residents of rural

---

1. The Alaska Statehood Act declared Alaska admitted into the Union on an equal footing with the other States. *See* Alaska Statehood Law, Pub.L. No. 85–508 § 1, 72 Stat. 339 (1958) (codified at note preceding § 21 of Title 48, Territories and Insular Possessions). It provided that the United States would retain title to all property in Alaska to which it had title, including public lands, and that Alaska would retain title to all property, title to which was in the Territory of Alaska or any of the subdivisions. *See id.* § 5, 72 Stat. 340. The Statehood Act also permitted Alaska to select acreage from certain national forests and other federal public lands within thirty-five years after its admission to the Union. *See id.* § 6(a), (b), 72 Stat. 340, as amended by Pub.L. No. 96–487, § 906(a)(1), (2), 94 Stat. 2371, 2437.

areas, the Alaska Supreme Court declared the amended statute in violation of the State Constitution. *See McDowell v. State of Alaska,* 785 P.2d 1, 9 (Alaska 1989). The court stayed the effect of its decision until July 1, 1990. At that time, the State had no laws in effect consistent with the Lands Conservation Act's rural subsistence use priority. The Department of the Interior and the Department of Agriculture jointly published temporary fish and wildlife management regulations, applicable to public lands as defined by the Act, implementing the rural subsistence priority.[2] *See* Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed.Reg. 27,114, 27,118 (1990). The final regulations, promulgated in May 1992, made no significant changes to the scope of federal authority. *See* Subsistence Management Regulations for Public Lands in Alaska, Subparts A, B, and C, 57 Fed.Reg. 22,940 (1992).

### B

■ As to the claims of the Council and the individuals in their official capacity as state legislators, we are guided by *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), a decision rejecting the standing of members of Congress in federal court, and the Supreme Court's interpretation in *Raines* of *Coleman v. Miller,* 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), a case dealing with the standing of state legislators. *Raines* involved claims brought by federal legislators against executive branch officials, and applied a particularly rigorous standing analysis in light of the separation-of-powers concerns raised in that case. *See Raines,* 521 U.S. at 819–20, 117 S.Ct. 2312, *see also Chenoweth v. Clinton,* No. 98–5095, slip op. at 7 (D.C.Cir. July 2, 1999). But the Court did not limit its analysis to interbranch disputes, and we read its discussion of *Coleman* to apply to suits brought by state

as well as federal legislators. The bottom line is that the claimed injuries of the individual Alaskan legislators and the Council are not legally or judicially cognizable. The injuries are not "personal" or particularized to them; and they have not established a "personal stake" in the alleged dispute, as Article III of the Constitution demands. *See Raines,* 521 U.S. at 819, 117 S.Ct. 2312.

According to the complaint, the Alaska State Constitution confers upon the individual legislators "an affirmative duty to legislate for the management of all of the State's resources including ... fish and wildlife." The complaint goes on: Alaska legislators "are obligated by ... oath to act in the best interests of the citizens of the State as a whole, to abide by the limitations of the Constitution of the State of Alaska with respect to the common use of fish and wildlife resources and to make a conscientious application of their authority to protect and preserve the public trust for all citizens of the State of Alaska." The legislators also state that they are similarly required to support the Constitution of the United States. *See* U.S. CONST. art. VI. But they and the Council say that because the federal statute and its implementation are illegal, the federal government has interfered with their state duties, and has nullified their legislative prerogatives regarding fish and wildlife management.

■ The reading *Raines* gave to *Coleman* establishes that injuries of the sort alleged here do not deprive individual legislators of something to which they are personally entitled. In narrow circumstances, legislators have a judicially recognized, personal interest in maintaining the "effectiveness of their votes." *See Raines,* 521 U.S. at 821–22, 117 S.Ct. 2312 (citing *Coleman v. Miller,* 307 U.S. at 438, 59

---

2. The Regulations noted that "[n]avigable waters generally are not included within the definition of public lands." *See* Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed.Reg. 27,114, 27,118 (1990).

S.Ct. 972 (1939)).[3] But there is not the slightest suggestion here that these particular legislators had the votes to enact a particular measure, that they cast those votes or that the federal statute or the federal defendants did something to nullify their votes. *See id.* at 823, 117 S.Ct. 2312. What we see instead is, at most, a claim that the Lands Conservation Act, either because of the Supremacy Clause or the rulings of the Alaska Supreme Court, had the effect of rendering the Alaska Legislature unable to control hunting and fishing on federal lands within the State. *See* 16 U.S.C. § 3115(d). If for these reasons the individual legislators cannot enact valid laws because the laws would conflict with federal law, or cannot enact legislation implementing the Act because this would be at odds with their State Constitution, their loss (or injury) is a loss of political power, a power they hold not in their personal or private capacities, but as members of the Alaska State Legislature. *See Raines,* 521 U.S. at 821, 117 S.Ct. 2312. Furthermore, the complaint nowhere mentions any specific act or regulation of the Alaska Legislature that the Lands Conservation Act has overruled, nullified or otherwise adversely affected. In fact, federal regulations promulgated pursuant to the Act provide that "[s]tate fish and game regulations [applicable] to public lands and such laws are hereby adopted and made a part of these regulations to the extent they are not inconsistent with, or superseded by this Part." *See* 57 Fed.Reg. at 22,955. While state legislation or regulations in conflict with the federal statute or federal regulations may be unenforceable—for example, the Federal Subsistence Board can close public lands to hunting and fishing even if the State permits it, *see id.*—that type of injury does not entitle individual legislators to seek a judicial remedy. Their supposed injury is nothing more than an "abstract dilution of institutional legislative power" to regulate and manage fish and wildlife resources, and we are not sure it amounts to even this much. *See Raines,* 521 U.S. at 826, 117 S.Ct. 2312.

■ The Alaska Legislative Council stands on no better constitutional footing despite its authorization under State law to "sue in the name of the legislature during the interim between sessions" if a majority vote of the Council approves. *See* ALASKA STAT. § 24.20.060(4)(F) (Michie 1996). Even if a state legislature and its authorized representative have standing to defend the constitutionality of a state statute attacked in federal court, the position of the Alaska Legislature in this case is not comparable. *See, e.g., Karcher v. May,* 484 U.S. 72, 84, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987) (White, J., concurring). The Council complains about federal limitations on State prerogatives in the management of fish and wildlife. This is the same complaint the individual legislators make in their official capacity. The resulting injury is not to the Legislature and it is not to the individual legislators. It is to the State itself. The authority to manage fish and wildlife belongs to the State as a whole.[4] If the Lands Conservation Act diminishes the State's authority, it injures

---

**3.** The individual legislators do not allege injury to other interests that could provide a basis for legislative standing. For example, an elected representative excluded from the legislature and denied his salary alleges a personal injury because he has been "singled out for specially unfavorable treatment as opposed to other Members of" that body. *See Raines,* 521 U.S. at 821, 117 S.Ct. 2312 (citing *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). Similarly, a representative whose vote was denied "its full validity in relation to the votes of [his] colleagues," might also allege a personal injury

sufficient to confer standing. *See id.* at 824 n. 7, 117 S.Ct. 2312.

**4.** For example, the Alaska Statehood Act gave the State of Alaska the authority to administer and manage fish and wildlife resources, after the Alaska State Legislature made adequate provision for their administration, management and conservation. *See* Pub.L. No. 85–508, § 6(e), 72 Stat. 339, 340–41 (1958). The entire statute speaks in terms of property and authority given to the State of Alaska, not to the Alaska State Legislature.

state sovereignty, not legislative sovereignty.[5] The Legislature is not authorized to sue on behalf of the State, *see* ALASKA STAT. § 24.20.060(4)(F)—the Governor holds that power, *see* ALASKA CONST. art. III, § 16— and the Legislature suffers no separate, identifiable, judicially cognizable injury that entitles it to sue on its own behalf.

### C

■ The legislators, in their individual capacities, seek to mount an equal protection challenge to the Act. They view the Act's rural subsistence use preference as discrimination against Alaska's urban residents, and brand the preference irrational because the rural/non-rural distinction ignores need, income level, dependence on subsistence resources, community character, and ethnic and racial membership. They also claim that federal designations of certain communities as "rural," pursuant to the statute, are arbitrary and irrational.

■ For the purpose of establishing standing, it is not enough merely to claim discrimination. The plaintiffs must be able to trace the discrimination to some "distinct and palpable" injury to them. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *United States v. Hays*, 515 U.S. 737, 743–44, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). At the pleading stage, general factual allegations may suffice to establish injury and are presumed to "embrace those specific facts that are necessary to support the claim." *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The individuals' claims here fail to meet even this low threshold. *See, e.g., Gottlieb v. FEC*, 143 F.3d 618, 622 (D.C.Cir.1998). Each of them is, according to the complaint, a non-rural resident of Alaska; some hunt and fish in the State of Alaska, others only fish, others only hunt, and two apparently engage in neither activity but eat fish and game. They say federal law limits their activities, yet the facts alleged do not indicate that the law even reaches or in any way affects their activities, critical elements in establishing their standing to sue. The subsistence preference in the statute and the regulations affect public lands, *see* 16 U.S.C. § 3114; 57 Fed.Reg. at 22,951, but none of these plaintiffs claim to hunt or fish on those lands. *See Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 683–85, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). As to fishing, they do not state where they fish or what species they seek or how federal law limits their fishing. As to game, the complaint mentions federal restrictions on hunting moose in the Tongass National Forest, caribou in a sector in east central Alaska, and musk ox in a region in western Alaska. But no plaintiff claims to hunt these animals in these places. Plaintiffs do allege that they "desire[ ] and intend[ ] to, in the future, hunt and fish within the State of Alaska." But the mere desire to hunt or fish in the future, supposedly limited in some unspecified way, falls short of demonstrating the type of actual or imminent injury sufficient under Article III to constitute an injury in fact. *Compare Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563–65, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). That the federal Act and its implementing regulations could reduce the opportunities for hunters and fishermen from non-rural areas in Alaska is, on the face of the complaint, perhaps conceivable. But that is not enough. Pleadings must be more than "an ingenious academic exercise in the conceivable." *See SCRAP*, 412 U.S. at 688, 93 S.Ct. 2405.

In addition to limiting the hunting of moose, caribou and musk ox, the complaint

---

5. Indeed, the State, represented by the Attorney General, brought a lawsuit challenging federal authority to regulate subsistence taking of fish and game under the Act. *See John*, 1994 WL 487830.

also alleges that federal regulations have expanded the taking of lynx, black bear, ruffed grouse and Dall sheep on certain public lands beyond previous State bag limits. No individual plaintiff claims an interest in these particular animals for hunting or any other recreational purpose. To the extent the complaint states any injury to plaintiffs, it is not on the basis that the named legislators are being harmed in their individual capacity. The harm alleged is put in terms of the effect on the State Legislature, which—so the complaint states—cannot protect lynx, ruffed grouse, black bear and Dall sheep or cannot remove federal restrictions on hunting moose, caribou and musk ox. Because the complaint reveals no perceptible harm to the legislators in their individual capacity, they lack standing to bring their claims.

### D

■■■■ The complaint also alleges that federal officials exceeded their authority under the Act by extending regulations beyond federal lands and thus violated the Administrative Procedure Act. Section 702 of the APA provides that: "[a] person ... adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Are any plaintiffs "adversely affected" within the meaning of the Lands Conservation Act? See National Wildlife Fed'n, 497 U.S. at 882–83, 110 S.Ct. 3177. To be so situated they must satisfy all constitutional standing requirements and must demonstrate that their injury is "to interests of the sort protected" by the statute. See Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 665 (D.C.Cir.1996) (en banc); see also Animal Legal Defense Fund, Inc. v. Glick-

man, 154 F.3d 426, 431 (D.C.Cir.1998) (en banc). The Act, as plaintiffs' complaint states, does not authorize federal officials to extend the subsistence preference to lands validly selected by the State or other named parties. See 16 U.S.C. § 3102(3). But apart from two conclusory sentences, the complaint does not mention any federal activity on non-public lands and it utterly fails to identify any "agency action" affecting hunting and fishing on such lands, let alone hunting and fishing by these particular plaintiffs. The regulations currently in effect apply only to the "taking of fish and wildlife on public lands in the State of Alaska." See 57 Fed.Reg. at 22,951. The definition of "public lands" explicitly excludes "land selections of the State of Alaska which have been tentatively approved or validly selected under the Alaska Statehood Act and lands which have been confirmed to, validly selected by, or granted to the Territory of Alaska or the State under any other provision of Federal law." See id. at 22,952.

In nevertheless asserting that the federal defendants are regulating beyond federal lands, plaintiffs apparently believe that "public lands," as defined in the Act, cannot be read to include waters in which the United States has a reserved water right,[6] and that if the ownership of such a right includes the power to manage fish and game, the federal defendants cannot rest on a mere assertion that they have such a right. They must first "establish" its existence and then adopt regulations based upon it. The federal defendants urge us to dispose of this claim on ripeness grounds. Subsistence management regulations identify federal land units in which reserved water rights exist and subject those units to the Act's federal subsistence priority.[7] See Subsistence Management Regulations

---

6. In State of Alaska, 72 F.3d at 703–04, the Ninth Circuit held that the United States has reserved water rights in some navigable waters in Alaska and by virtue of those rights, interests in some navigable waters. The Court concluded that such waters are included within the definition of "public lands." It

directed the federal agencies that administer the subsistence priority to identify those waters.

7. When plaintiffs filed their first amended complaint, these regulations were not yet final.

for Public Lands in Alaska, Subparts A, B, C, and D, Redefinition to Include Waters Subject to Subsistence Priority, 64 Fed. Reg. 1276 (1999). But these regulations, though final, will not take effect until October 1, 1999. If the Secretary of the Interior certifies that the Alaska State Legislature has amended its Constitution so that it may pass laws consistent with the Act before that time, the regulations will not take effect until December 1, 2000. *See id.* Plaintiffs seek a declaratory judgment and an injunction against the regulations; we do not generally apply these remedies to administrative determinations "until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *See Abbott Lab. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Although we therefore have severe doubts whether the APA claim is ripe, there is no need to decide the question. Our earlier discussion of the individual plaintiffs' lack of standing applies as well to their contentions regarding the APA. These plaintiffs have alleged no injury—not even of the insufficient hypothetical or speculative variety—that may be ascribed to federal regulations applying the subsistence preference to waters in Alaska in which the United States asserts reserved water rights. They do not say they ever fished those waters, nor do they say they ever will. *See, e.g., Defenders of Wildlife,* 504 U.S. at 564, 112 S.Ct. 2130. They mention only a general "desire[ ] and inten[t] to … fish," but when it comes to where they want to fish, what species of fish they want to catch and how the regulations would limit their fishing, the complaint is silent. Plaintiffs have therefore failed to demonstrate the type of actual injury Article III requires.

Plaintiffs also ask us to read their APA claim to encompass a number of other supposedly excessive agency actions mentioned in their complaint.[8] These include: "the designation of management units,

the issuance and denial of permits, the setting of hunting seasons, bag limits, and methods of take." As we have already mentioned, the complaint states that the Federal Subsistence Board prohibits or restricts non-rural Alaskans from hunting moose, caribou and musk ox in certain areas, and allows the taking of lynx, ruffed grouse, black bear and Dall sheep in others. For reasons previously given, plaintiffs have failed to allege that their interests are "adversely affected" by these actions, as the APA requires. *See* 5 U.S.C. § 702, *see also National Wildlife Fed'n,* 497 U.S. at 889, 110 S.Ct. 3177. It is not enough for them to claim that they are "deprived of their ability to hunt and fish." Hunt and fish what, and where? What is meant by "ability"? The possibility they may wish to hunt these particular animals in these particular areas at some time in the future? Such claims do not allege "actual or imminent injury" and are insufficient to confer standing. *See, e.g., Defenders of Wildlife,* 504 U.S. at 566–67, 112 S.Ct. 2130. Nothing in the complaint gives the slightest indication that any one of the plaintiffs ever hunted or ate musk ox or Dall sheep or any of the other named animals in the regulated regions, or for that matter, anywhere else. *See Sierra Club,* 405 U.S. at 734–35, 92 S.Ct. 1361. The additional allegation in the complaint that plaintiffs' "ability to enjoy the full abundance of wildlife will be diminished if a remedy is not provided" adds nothing.

The decision of the district court is affirmed.

---

8. The district court did not do so. *See Alaska Legislative Council,* 15 F.Supp.2d at 25.