**OBER UNITED TRAVEL AGENCY, INC. and Society of Travel Agents in Government (STAG), Appellants,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Appellee.**

No. 97–5046.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 13, 1998.

Decided Feb. 13, 1998.

Barry Roberts, Bethesda, MD, argued the cause and filed the briefs, for appellants.

Marina Utgoff Braswell, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, R. Craig Lawrence, Assistant United States Attorney, and William J. Stone, Attorney, United States Department of Labor, were on the brief.

Before: SILBERMAN, WILLIAMS, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellants Ober United Travel Agency, Inc. (Ober) and the Society of Travel Agents in Government challenge the Department of Labor's determination, affirmed by the district court, that travel management contracts are covered by the provisions of the Service Contract Act. We agree with the district court.

## I.

For many years, General Accounting Office (GAO) regulations prevented the federal government from using travel agents; government agencies purchased airline tickets directly from air carriers. Following the deregulation of the airline industry in the late 1970s, however, the demand for travel agents' services increased. With many new airlines and a myriad of discount fares now available to passengers, travel agents' expertise could reduce costs dramatically for customers. Following a successful experimental program, the GAO ended the prohibition against the government's use of travel agents in 1984.

The government now gives travel agencies business through a competitive bidding process. Government agencies, either on their own or through the General Services Administration, issue bid solicitations for travel management contracts. While these contracts differ in some respects, they typically are "no-cost" contracts. The government neither directly pays a travel agency for its services nor is obligated to buy any tickets through that travel agency; instead, almost all travel management contracts oblige the travel agency to pay the government for the right to service its employees. The government agency may not utilize the services of another travel agency, although it is still free to deal directly with air carriers and other principals. The travel agency receives its compensation in the form of commission from air carriers and other travel suppliers, such as rental car companies.

The United States Air Force issued a bid solicitation for a travel management contract. Ober protested the inclusion of provisions requiring bidders to comply with the Service Contract Act (SCA), 41 U.S.C. § 351 et seq. (1994). The SCA mandates that service contracts specify the minimum level of wages and benefits, as determined by the Secretary of Labor, provided to employees working on those contracts. By its terms, it applies to "[e]very contract (and any bid specification therefor) entered into by the United States ... in excess of $2,500 ... the principal purpose of which is to furnish services in the United States through the use of service employees." 41 U.S.C. § 351(a) (1994) (emphasis added).

Appellants petitioned the Administrator of the Department of Labor's Wage and Hour Division for a ruling regarding the applicability of the SCA to travel management contracts. The Administrator, in a signed letter, determined that travel management contracts were covered. The Board of Service Contract Appeals (BSCA) affirmed the Administrator's ruling. Appellants challenged the BSCA's ruling as arbitrary and capricious. But the district court granted summary judgment in favor of the Department.

## II.

Appellants are not explicit as to their arbitrary and capricious charge, but it would seem they are claiming that the Secretary unreasonably characterized the principal purpose of travel management contracts. Appellants rely on our only previous case to consider the SCA's principal purpose requirement. In *American Federation of Labor and Congress of Industrial Organizations v. Donovan*, 757 F.2d 330 (D.C.Cir. 1985), we rejected a challenge to the Secretary's regulation providing that contracts for the sale of timber were *not* covered by the Act. Although timber sale contracts generally include provisions requiring buyers to perform certain services such as building temporary roads and performing erosion control activities, these services, the Secretary reasoned, were ancillary to the principal purpose of the contracts: the sale of timber. Appellants similarly insist that the "principal purpose" of travel management contracts is not "to furnish services," as the Secretary concluded, but rather to sell concession rights to travel agencies. *Donovan* is of little help to

appellants, however, since we deferred in that case to the Secretary's appraisal of the contracts' principal purpose. In any event, although the government does often receive compensation for awarding travel management contracts, we think it is impossible to conclude that the Secretary's determination as to their principal purpose is unreasonable. It seems to us that the contracts involved in *Donovan* were much more aimed at the selling of timber, and the services were ancillary, whereas here the reverse is so. After all, the government did not enter into these contracts until deregulation of the airlines made the reservation and ticketing services offered by travel agents particularly important, and appellants do not show that the government seeks to raise significant revenue through this device.

Appellants would buttress their rather weak argument by asserting that the Secretary's decision is inconsistent with the way the government interprets "procurement contract" in other statutory provisions. A "procurement contract" must be used when "the principal purpose of [an] instrument is to acquire ... property or services for the direct benefit or use of the United States Government." 31 U.S.C. § 6303(1) (1994). The government's regulation defines a procurement contract as "a mutually binding legal relationship obligating the seller to furnish the supplies or services ... and the buyer to pay for them. It *includes* all types of commitments that obligate the Government to an expenditure of appropriated funds...." 48 C.F.R. § 2.101 (1996) (emphasis added). It is undisputed that travel management contracts do not directly draw upon appropriated funds.[1] Appellants therefore argue that they could not have as their principal purpose the government's acquisition of services.

The government is rather unclear as to whether travel management contracts are actually treated as procurement contracts. It suggests that its regulation, *including* commitments to expenditures of appropriated funds, does not necessarily exclude commitments not implicating appropriated funds, but it never says whether the latter are covered. Assuming *arguendo*, however, that appellants are correct—that the government regulation restricts the definition of a procurement contract to those commitments involving the expenditure of appropriated funds—it does not follow that the Secretary's determination is vulnerable. It could mean, for instance, that the government's procurement regulation is underinclusive or it might mean the statutes have different coverage—they do have different purposes. One seeks to bring efficiency to the procurement process; the other aims to protect labor standards among contractors' employees. If the statutes were thought to have a different reach, it would be because the term "property or services" or the word "contract" had a different meaning under 31 U.S.C. § 6303 than comparable language under the SCA. Be that as it may, none of this has much to do with the interpretation or application of the SCA's "principal purpose" language.

Appellants' alternative claims directly dispute the Secretary's interpretation of other SCA language. They argue that the SCA only applies to government contracts that draw upon appropriated funds because the SCA states that "subject to limitations in annual appropriation Acts ... contracts to which [the SCA] applies may ... be for any term of years not exceeding five." 41 U.S.C. § 353(d) (1994). But, as should be quite apparent, that language, by acknowledging that further appropriations Acts could limit the period of contracts covered by the statute, hardly indicates that the SCA applies solely to contracts that are funded through appropriations.

To be sure, as appellants observe, a companion section, 41 U.S.C. § 354 (1994), directs the Comptroller General to aid in the enforcement of the SCA by distributing the names of violating persons or firms to all government agencies. At the time this provision was passed, appellants point out that the Comptroller General dealt only with accounts involving appropriated funds—which they infer supports their interpretation of § 353(d)—but it could just as easily mean

---

1. Appellants, though, do not suggest that the payments to carriers, which ultimately supply the funds for the travel agents' commissions, come from any source other than appropriated funds.

only that this enforcement technique was not available (then) if the particular contract involved did not implicate appropriated funds.

Nor are we persuaded by appellants' contention that the SCA provision stating that its coverage extends to contracts "in excess of $2,500" means no-cost contracts are excluded. The statute does not specify how one is to determine whether a contract is in excess of $2,500; it certainly does not say that the government must be obligated to pay $2,500, which appellants seem to assert.[2] Accordingly, the Secretary of Labor has issued a regulation stating that "concession contracts are considered to be contracts in excess of $2,500 if the contractor's gross receipts under the contract may exceed $2,500." 29 C.F.R. § 4.141(a) (1997). And, appellants do not dispute that travel management contracts produce more than $2,500 in revenue for travel agencies.

Appellants finally claim that travel management contracts are entirely exempt from the SCA because 41 U.S.C. § 356(3) (1994) excludes from coverage "any contract for the carriage of ... personnel ... where published tariff rates are in effect." The direct sale of air, bus, and rail tickets obviously falls within this language, so appellants contend that the exemption also includes tickets purchased from an independent travel agent acting on behalf of the carrier. The Secretary, however, does not so expansively interpret the exemption. She contends that travel management contracts are not "for carriage" but are only for reservation and ticketing services.

The government, in defense of its regulation and interpretations of the statute, characterizes the SCA as remedial legislation and reminds us of the old maxim of statutory interpretation that remedial statutes are to be liberally construed. Although courts have often used the maxim (the Supreme Court referred to it 30 years ago in *Peyton v. Rowe*, 391 U.S. 54, 65, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968)), it is not at all apparent just what is and what is not remedial legisla-tion; indeed all legislation might be thought remedial in some sense—even massive codifications. We suspect that the phrase typically has been used to give judicial approval to a particular set of policy viewpoints. And, we have recognized that in a post-*Chevron* era such policy-oriented canons of statutory construction may not be used to evaluate agency interpretations of ambiguous statutes. *See Michigan Citizens for an Indep. Press v. Thornburgh*, 868 F.2d 1285, 1292 (D.C.Cir.), *aff'd by an equally divided Court*, 493 U.S. 38, 110 S.Ct. 398, 107 L.Ed.2d 277 (1989) (declining to employ the canon that exemptions to antitrust laws should be narrowly construed to override a department's interpretation of a particular statute).

On the other hand, as we have implied, we think the Secretary's regulation setting forth how the SCA's monetary threshold for coverage is to be measured, and her interpretation of the reference to "appropriation Acts" certainly rests on a permissible interpretation of the ambiguities in the statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The travel agency profits by virtue of its contract with the government, and the SCA is designed to ensure that a contractor's employees also benefit under such contracts by having their wages raised to a prevailing standard. From the employee's vantage point, it does not matter whether the contractor is paid directly by the government or indirectly through commissions paid by the carriers who in turn charge the government.

Similarly, we think the Secretary's interpretation of the "carriage of personnel" exemption easily passes the permissibility test.

\*　　\*　　\*

Accordingly, the judgment of the district court is hereby affirmed.

---

**2.** Appellants claim that at a minimum the phrase "in excess of $2,500" must mean that a party has an *obligation* under the contract in excess of $2,500. We see nothing, however, in the SCA which requires that the value of the contract be measured by a party's *obligated* expenditures, as opposed to *actual* revenues or *actual* expenditures.