**C&E SERVICES, INC. OF WASHINGTON,**
Appellant,

v.

**DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY,**
Appellee.

No. 01–7138.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 11, 2002.

Decided Nov. 15, 2002.

**198**

Anthony Thompson argued the cause for appellant. With him on the briefs was Lynn F. Kaufmann.

Frederick A. Douglas argued the cause for appellee. With him on the brief were Henderson J. Brown, IV and Tanikia M. Roberts. Curtis A. Boykin entered an appearance.

Before: SENTELLE, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A disappointed bidder for a District of Columbia government contract argues that the city's refusal to award it the contract violated the Due Process Clause of the Fifth Amendment and the federal Service Contract Act. Because D.C. law creates no entitlement to a contract before it is formally awarded, we affirm the district court's dismissal of the due process claim. And because we agree with the district court that it lacked jurisdiction over the Service Contract Act claim, we affirm its dismissal of that claim as well.

### I.

The District of Columbia Procurement Practices Act of 1985, D.C.Code Ann. § 2–301.01 *et seq.*, identifies "competitive sealed bidding" as the "preferred method" for District agencies to award goods and services contracts. *Id.*§ 2–303.02(b). Such contracts "shall be awarded to the responsible and responsive bidder whose bid meets the requirements set forth in the [invitation for bids]" and to those who submit "the lowest bid price or lowest evaluated bid price." D.C. Mun. Regs. tit. 27, § 1541.1. Responsible and responsive low bidders, however, are not assured of winning contracts, for D.C. agencies may cancel the bidding process even *after* bids have been opened if cancellation is in the "best interest of the District government." D.C.Code Ann. § 2–303.07. *Ex post* cancellations require agencies to provide "cogent or compelling reasons to do so ... because of the potentially serious adverse impact of cancellation on the integrity of the competitive sealed bidding system after prices have been exposed." *Protest of Singleton Elec. Co., Inc.*, DCCAB No. P–411, 1994 WL 780923, at *5 (D.C.C.A.B. Nov. 15, 1994). Disappointed bidders may protest the award of a contract to the District of Columbia Contract Appeals Board (CAB) and then to the District of Columbia Superior Court. D.C.Code Ann. §§ 2–309.03(a)(1), 2–309.08; *Francis v. Recycling Solutions, Inc.*, 695 A.2d 63, 68–70 (D.C.1997); *Jones & Artis Constr. Co. v. D.C. Contract Appeals Bd.*, 549 A.2d 315, 318 (D.C.1988).

Appellee District of Columbia Water and Sewer Authority (WASA) "oversee[s] water and sewer operations for the District

and surrounding jurisdictions." D.C.Code Ann. § 34–2201.01(4). Although WASA now has its own procurement regulations, D.C. Mun. Regs. tit. 21, § 5300 *et seq.*, the Procurement Practices Act governed its activities at the beginning of the events at issue in this case, D.C.Code Ann. § 43–1687 (1996).

On July 25, 1999, WASA issued an invitation for bids to maintain and repair certain instruments at its Blue Plains Wastewater Treatment Plant. At that time, instrumentation services were provided by J. Givoo Consultants, Inc. Appellant C&E Services, Inc. of Washington, as well as Givoo, submitted a bid to furnish the instrumentation services. Viewed through the lens we employ when reviewing the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)—"we must accept as true all of the factual allegations contained in the complaint," *Swierkiewicz v. Sorema*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 995 n. 1, 152 L.Ed.2d 1 (2002)—the following events then occurred.

During the bidding process, WASA issued a "Clarification" permitting prospective bidders to offer wages consistent with the Service Contract Act, 41 U.S.C. § 351 *et seq.*, which applies to federal contractors who "furnish services," *id.* § 351(b)(1), rather than (as the contract with Givoo had required) the higher wages mandated by the Davis–Bacon Act, 40 U.S.C. § 276a *et seq.*, which applies to federal contractors who provide "construction, alteration, and/or repair, including painting and decorating, of public buildings or public works," *id.* § 276a(a). Am. Compl. ¶¶ 57, 59, 60. After bids were opened, C&E "received a copy" of the agenda of WASA's most recent board meeting, revealing that the agency planned to award the contract to Givoo. *Id.* ¶¶ 19–20. Ten days later,

C&E filed a protest of the "proposed award" with the CAB. *Id.* ¶ 25.

While C&E's protest was pending, WASA, acting pursuant to its powers under the Procurement Practices Act, cancelled the entire bidding process. *Id.* ¶ 28. In its written justification, WASA concluded that although C&E had "submitted the lowest evaluated bid," cancellation "is in the best interest of WASA" because "the specifications as written in the [invitation for bids] were ambiguous and insufficient to cover WASA's need." *Id.* ¶ 29. WASA identified the "ambiguous and insufficient" specifications, but mentioned no deficiencies concerning wage requirements. *Id.* ¶¶ 33–37.

WASA then opened up a new bid process for the instrumentation contract that differed from the old process in two ways. First, WASA solicited bids under its own procurement regulations that, unlike the Procurement Practices Act, impose no low-bidder rule. *Id.* ¶ 42; D.C. Mun. Regs. tit. 21, § 5323.2. Second, ten days before bids were due, WASA required all bidders to match the Davis-Bacon-level compensation that a pre-existing union contract obligated Givoo to provide. Am. Compl. ¶¶ 51, 58, 59, 63.

Filing suit in the United States District Court for the District of Columbia, C&E alleged that WASA, through "a pattern and practice of wrongful manipulation of the public procurement process by arbitrary and capricious acts," deprived it of property without due process of law in violation of the Fifth Amendment. *Id.* ¶¶ 121, 126, 132, 138. C&E sought an injunction awarding it the instrumentation contract, damages for wrongfully awarding the contract and for bid preparation, and attorneys' fees. *Id.* at 34–35. C&E also requested a declaratory judgment that WASA's wage requirement violated the Service Contract Act. On WASA's Rule

12(b)(6) motion, the district court dismissed the entire complaint, finding that (1) C & E failed to state a claim establishing a property right in the instrumentation contract and (2) the Declaratory Judgment Act does not authorize declaratory relief under the Service Contract Act. *C&E Servs., Inc. of Wash. v. D.C. Water and Sewer Auth.*, No. 00–1584, mem. op. at 9, 11 (D.D.C. May 21, 2001).

C&E appeals. We consider the district court's grant of the motion to dismiss de novo, *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (D.C.Cir.2001), keeping in mind "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## II.

■ We begin with C&E's claim that WASA deprived it of property without due process of law. To determine whether C&E has stated such a claim, "we first determine whether ... [it] has a property ... interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C.Cir.1993) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41, 105 S.Ct. 1487, 1491–93, 84 L.Ed.2d 494 (1985)). "Property interests," the Supreme Court held in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement

to those benefits." As *Roth* explains, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

■ C&E believes that D.C. law gives it "a legitimate claim of entitlement" to the instrumentation contract because (1) the Procurement Practices Act imposes a low-bidder rule and (2) C&E "submitted the lowest evaluated bid," according to WASA. This entitlement theory, however, ignores the Procurement Practices Act provision permitting cancellation of the bid process even after bid opening. D.C.Code Ann.§ 2–303.07. WASA's authority to cancel for "cogent or compelling reasons" means that submitting the lowest bid does not necessarily translate into winning the contract. Instead, cancellation of the bidding hangs over bidders' heads until contracts are actually awarded. Because the Constitution's "procedural protection of property is a safeguard of the security of interests that a person *has already acquired* in specific benefits," *Roth*, 408 U.S. at 576, 92 S.Ct. at 2708 (emphasis added), a Fifth Amendment-protected property interest arises only upon award.

The D.C. Court of Appeals agrees with this result. In *Network Technical Services, Inc. v. District of Columbia Data Co.*, 464 A.2d 133 (D.C.1983), another disappointed bidder challenged a D.C. agency's procurement decision. For jurisdictional reasons that are irrelevant here, "the only issue [before the court was] whether a specific statute or the Constitution entitled [the bidder] to a hearing prior to the award and execution of the contract." *Id.* at 135. Answering no, the court explained that "no property interest exists prior to execution." *Id.*

C&E alleges that WASA's cancellation of the bid process and re-solicitation of bids under conditions favorable to Givoo demonstrates that WASA's rationale for cancellation was pretextual and therefore "arbitrary and capricious." Am. Compl. ¶ 121. This is irrelevant. Whether an agency violates a well-defined state law standard has no bearing on the constitutional question of whether the expectations created by state law rise to the level of a Fifth Amendment property interest. We may assume that WASA offered no "cogent or compelling" reason for cancellation in this instance, yet still conclude that WASA's uncontested authority to cancel by providing such a reason defeats C&E's claim of a legal entitlement. Otherwise, every garden variety dispute regarding the D.C. procurement process would become a federal case.

Our conclusion that C&E lacks a sufficient property interest to maintain its due process claim does not deprive the company of a remedy. Under the Procurement Practices Act, C&E may bring abuse of discretion claims before CAB and, thereafter, before the D.C. Superior Court. We, of course, express no opinion on whether, as WASA argues, C&E has waived this right by dismissing its CAB protest, allegedly in reliance on WASA's intentional misrepresentation regarding the instrumentation contract's wage requirements. Am. Compl. ¶ 39. That is a question for the D.C. courts.

## III.

■■ Turning to C&E's request for a declaratory judgment that WASA violated the Service Contract Act (SCA) by requiring bidders to offer Davis–Bacon Act wages rather than SCA wages, we begin with the well-established rule that the Declaratory Judgment Act "is not an independent source of federal jurisdiction."

*Schilling v. Rogers,* 363 U.S. 666, 677, 80 S.Ct. 1288, 1296, 4 L.Ed.2d 1478 (1960) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950)). Rather, "the availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Id.* Thus, the Supreme Court held in *Schilling* that federal courts may not declare a plaintiff's rights under a federal statute that Congress intended to be enforced exclusively through a judicially unreviewable administrative hearing.

■■ This case is nearly identical to *Schilling*. "[I]t is plain," we have held, "that the SCA creates no private remedy" in the federal courts. *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.,* 941 F.2d 1220, 1228 (D.C.Cir.1991). Instead, disputes arising under the SCA must be resolved, in the first instance, by "the statutory scheme for administrative relief set forth by Congress in the SCA" and administered by the Department of Labor. *Id.* at 1226. This case differs from *Schilling* in only one respect: Under the SCA, the Department of Labor's administrative determinations are judicially reviewable. *See, e.g., Ober United Travel Agency, Inc. v. United States Dep't of Labor,* 135 F.3d 822, 823 (D.C.Cir.1998) (rejecting bidder's claim and affirming Department of Labor's determination that the SCA applies to U.S. Air Force-awarded travel management contracts). But the operative principle remains the same. A judicial declaration telling WASA how to interpret the SCA would constitute an end-run around Congress's clear intent that the Department of Labor interpret and enforce the SCA in the first instance. *Schilling* teaches that the Declaratory Judgment Act does not authorize such a result. *Cf. Block v. Cmty. Nutrition Inst.,* 467 U.S. 340, 352–53, 104 S.Ct. 2450, 2457–58, 81 L.Ed.2d 270 (1984) (Administrative Procedure Act action im-

pliedly precluded by federal statute intended to foreclose private party enforcement); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19–21, 101 S.Ct. 2615, 2625–27, 69 L.Ed.2d 435 (1981) (section 1983 action impliedly precluded by federal statute intended to foreclose private party enforcement). Thus, plain language of the Declaratory Judgment Act notwithstanding, we agree with the district court that it lacked authority to adjudicate C&E's rights under the SCA except pursuant to the Administrative Procedure Act *following* a Department of Labor determination.

## IV.

Because C&E has failed to state a claim under either the due process clause or the Service Contract Act, we affirm in all respects.

*So ordered.*