LAC VIEUX DESERT BAND OF LAKE SUPERIOR CHIPPEWA INDIANS OF MICHIGAN, Plaintiff,

v.

John ASHCROFT, et. al., Defendant.

No. 01–CV–2672 (RJL).

United States District Court,
District of Columbia.

Jan. 27, 2004.

Conly J. Schulte, Monteau & Peebles, LLP, Omaha, NE, for Plaintiff.

Edward J. Passarelli, United States Department of Justice Environment and Natural Resources, Washington, DC, Charles R. Gross, Grand Rapids, MI, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

LEON, District Judge.

Before the Court is defendant's motion to dismiss the plaintiff's action. For the following reasons, the Court concludes that it lacks jurisdiction to issue the relief sought by the plaintiff, and accordingly, grants the defendant's motion to dismiss.

### *Factual Background*

The Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan ("Lac Vieux" and "plaintiff") is a federally recognized Indian tribe operating the Lac Vieux Desert Resort & Casino in Watersmeet, Michigan ("The Resort"). Pl's Mem. in Opp. at 1. Lac Vieux operates a Class II Bingo Facility[1] at The Resort, located on the tribe's reservation. *Id.* The Resort is thus located on "Indian Land" as defined by the Indian Gaming Regulatory Act (IGRA). 25 U.S.C. § 2703(4).

Lac Vieux has developed and intends to promote a form of bingo it calls "Proxy Play Bingo." Pl's Mem. in Opp. at 2. This allows individuals not physically present on Lac Vieux's land ("principals") to play bingo through the use of "proxy agents" who are present at The Resort. *Id.* Principals desiring to play Proxy Play Bingo must establish an on-reservation bank account and authorize a proxy agent to access the account to purchase bingo cards on behalf of the principal. *Id.* at 3.

The actual game of bingo involved in Proxy Play Bingo is conducted live on Indian Lands. *Id.* at 3. Bingo numbers are pulled by an electronic ball drawer and the proxy agents play the cards on behalf of the principal at Lac Vieux's Bingo Hall. Compl. ¶ 27. During the games, a principal may watch the progress of the game from a remote location using the Internet. Pl. Mem. in Opp. at 2–3. The game continues until a proxy agent or on-reservation bingo card holder declares bingo. *Id.* at 3. The game results are then made available on the Internet. *Id.* If the winner of a game of bingo is a proxy agent, the agent deposits the winnings in the principal's on-reservation bank account. *Id.* at 3–4. The Tribe intends to market Proxy Play Bingo through several different media including magazines, brochures, and the Internet. Compl. at 7.

On June 21, 2000, Lac Vieux representatives met with gaming officials to discuss their plan to implement Proxy Play Bingo. Compl. Ex. B at 1. On October 26, 2000, Kevin Washburn, the General Counsel for the National Indian Gaming Commission ("NIGC"), the agency charged with overseeing Class II gaming under IGRA, sent Lac Vieux a letter referencing the June 21 meeting. *Id.* In the letter, Mr. Washburn stated that "Internet Bingo apparently seeks to draw any player who can log onto the internet from any location" and thus "[t]he game itself does not depend on the player being located in a tribal bingo facility or even on Indian lands." *Id.* at 1–2.

---

1. The Indian Gaming Regulatory Act (IGRA) divides games of chance into three classes. Class I is defined as social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of, or in connection with, tribal ceremonies or celebrations. 25 U.S.C. § 2703(6). Class I games on Indian lands are within the exclusive jurisdiction of the Indian tribes and are not subject to state regulation. 25 U.S.C. § 2710(a). Class II gaming is Bingo when it is played for prizes (including money). 25 U.S.C. § 2703(7)(A). Class II gaming is subject to tribal regulation with oversight by the National Indian Gaming Commission (NIGC). *Id.* Class III gaming is defined as all forms of gaming that are not Class I gaming or Class II gaming. 25 U.S.C. § 2703(8). Class III gaming is only allowed if it is authorized by a compact between a tribe and a state. 25 U.S.C. § 2710(d).

Mr. Washburn thus concluded that "Internet Bingo lies outside IGRA's safe harbor" and "game operators may be subject to criminal prosecution for violation of state and federal law." *Id.* at 2.

On November 17, 2000, after hearings on this issue were held before the Telecommunications, Trade and Consumer Protection Sub–Committee of the House Commerce Committee on Internet Proxy Bingo, Kevin V. Di Gregory, a Deputy Assistant Attorney General in the Criminal Division at the U.S. Department of Justice, issued a letter to Lac Vieux stating that because it "appears to us that the Tribe's internet gambling business would be conducted, in part, off Indian lands, and that a number of specific gambling activities associated with that business would also occur off of Indian lands[,]" the business "may well violate the laws of particular states and federal law." Compl. Ex. C at 2.

On December 26, 2001, the plaintiff filed the current suit for declaratory and injunctive relief, claiming to be in fear of civil suit and criminal prosecution as a result of these letters.[2] In effect, the plaintiff seeks judicial review of a non-reviewable decision and a judicial order both preempting future enforcement action and stating that Proxy Play Bingo is authorized under IGRA. For the following reasons, this Court cannot do either.

### Discussion

 In order to sue an agency of the Federal government, as the plaintiff seeks to do against the NIGC, the government must first consent by waiving its sovereign immunity. *In re Sac & Fox Tribe of Mississippi in Iowa / Meskwaki Casino Litigation*, 340 F.3d 749, 755 (8th Cir.2003) (citing *Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984)) (*"In re Sac & Fox Tribe of Mississippi "*). Indeed, the terms of that waiver will define this Court's jurisdiction to entertain such a suit. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Absent a specific statutory waiver or consent to be sued, this Court lacks jurisdiction to hear the present suit. *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). No such waiver, or consent, under either the Administrative Procedure Act ("APA") or IGRA exists in this case.[3]

 Section 702 of the APA does not create an independent basis of jurisdiction. *Califano v. Sanders*, 430 U.S. 99,

---

**2.** In addition to a declaratory judgment that Proxy Play Bingo is lawful under IGRA, plaintiff also seeks an injunction prohibiting defendants from interfering with Lac Vieux's implementation, operation, licensing and leasing of Proxy Play Bingo, or with revenues derived therefrom by Lac Vieux. Compl. at 13.

**3.** The plaintiff also relies on the Declaratory Judgment Act as a jurisdictional basis for this action. However, the DJA does not waive sovereign immunity, *United States v. King*, 395 U.S. 1, 5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), and does not constitute an independent basis for jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) (citing *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct.

876, 94 L.Ed. 1194 (1950)); *C & E Services of Washington v. D.C. Water and Sewer Authority*, 310 F.3d 197, 201 (D.C.Cir.2002). Rather, the statute merely creates a remedy in cases otherwise within the Court's jurisdiction. *Id.* The plaintiff refers to the Ninth Circuit's opinion in *Spokane Indian Tribe v. United States*, 972 F.2d 1090 (9th Cir.1992) in support of its argument that the DJA provides a basis for the declaratory and injunctive relief they seek. However, the plaintiff's analysis fails to acknowledge the crucial fact that government and the plaintiffs in that case *"agreed* to resolve the issue by an action under the Declaratory Judgment Act..." *Id.* at 1091 (emphasis added). That is not the case here.

105–07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Rather, it confers a general cause of action upon persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, withdrawing it only to the extent a relevant statute "preclude[s] judicial review," 5 U.S.C. § 701(a)(1); *see also Block,* 467 U.S. at 345, 104 S.Ct. 2450. Thus, the APA's presumption of judicial review may be overcome if congressional intent to preclude review can be "fairly discerned" from the statutory scheme underlying the agency action being challenged. *United States v. Fausto,* 484 U.S. 439, 452, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Indeed, a statute's "enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process" may establish a intent to limit judicial review. *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 216, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (interpreting the Federal Mine Safety and Health Act to preclude judicial review of pre-enforcement actions, where the statute provided for review of agency enforcement proceedings, but was silent as to pre-enforcement actions); *see also Southern R. Co. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 454, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); *Morris v. Gressette,* 432 U.S. 491, 499, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977).

■ An analysis of IGRA, the "relevant statute" in this case, illustrates Congress' clear intent to limit judicial review to certain final agency actions taken under that statute. *See Cheyenne–Arapaho Gaming Comm'n v. NIGC,* 214 F.Supp.2d 1155, 1171 (N.D.Okla.2002). IGRA contains "detailed enforcement and administrative review system." *In re Sac & Fox Tribe of Mississippi,* 340 F.3d at 756; *see also Broward Vending v. National Indian Gaming Commission,* No. 99–68–CIC–

Seitz Garber (S.D. Fla. April 6, 2001) (Def. Opp., Exhibit E). The statute expressly provides that "[d]ecisions by the Commission [made] pursuant to Sections 2710, 2711, 2712, and 2713 . . . shall be final agency decisions for the purposes of appeal to the appropriate Federal district court." 25 U.S.C. § 2714. "The omission of a provision thereby shows Congressional intent to prohibit judicial review over any other agency actions as opposed to the few already granted express jurisdiction." *Cheyenne–Arapaho Gaming Comm'n,* 214 F.Supp.2d at 1171. Moreover, the legislative history of the statute reflects an intent to limit judicial review only to certain agency decisions, thereby overcoming the APA's presumption of judicial review. *See* Senate Report 100–446 at 20, 1998 U.S.C.C.A.N. 1090 ("certain Commission decisions will be final agency provisions for the purposes of court review."). Accordingly, for the Court to have jurisdiction over this action, the plaintiff must show that its claims involve a final agency decision for which IGRA provides judicial review. The plaintiff fails to meet this burden for the following reasons.

First, the plaintiff's action for declaratory relief does not fall within any of the statutory categories for which IGRA provides judicial review. *See* 25 U.S.C. §§ 2710 (decisions on tribal gaming ordinances), 2711 (decisions on management contracts), 2712 (review of existing ordinances and contracts), 2713 (civil penalties). "These sections represent final agency actions and the implied corollary of section 2714 is that other agency actions are not final and thus not reviewable." *Broward Vending v. National Indian Gaming Commission,* No. 99–68–CIC–Seitz Garber, at 8 (citing *Block,* 467 U.S. at 347, 104 S.Ct. 2450).

■ Second, even if the action could be construed to fall within any of these

categories, the plaintiff fails to show that the NIGC's "advisory letter" constitutes final action by the Commission. IGRA specifically limits APA review to "decisions of the Commission" pursuant to §§ 2710–2713. 25 U.S.C. § 2714. All of these sections provide that for the agency to take any official action, the Chairman or Commission must make a decision, 25 U.S.C. §§ 2710–2713, and decisions made by the Chairman are appealable to the full Commission. 25 U.S.C. § 2714(a)(2); *see also Cheyenne–Arapaho Gaming Comm'n*, 214 F.Supp.2d at 1168 (finding that Chairman-issued orders must be reviewed by the full Commission on appeal to be considered final agency action). Neither the letter from the General Counsel of the NIGC, nor the letter from the Department of Justice official, can be considered reviewable action taken by the Chairman or Commission. Indeed, the General Counsel is a staff member of the NIGC and his letter does not purport to create any law or bind the agency. *Cf. Sabella v. United States*, 863 F.Supp. 1, 5 (D.D.C.1994) (finding that an advisory letter of the General Counsel

of the National Oceanic Atmospheric Administration was not final agency action where the General Counsel was a subordinate official and the Administrator was free to disagree with her interpretation).[4] In sum, the letters put forth by the plaintiff regarding the Proxy Play Bingo game do not constitute, individually or combined, a reviewable "final action" under IGRA's statutory framework. Accordingly, there is no waiver of sovereign immunity under either the APA or IGRA because IGRA limits such waivers to certain "final agency decisions," none of which occurred here. As such, this Court lacks jurisdiction to proceed and the plaintiff's case must be dismissed.[5]

### Order

For all the reasons set forth above, this Court lacks jurisdiction to review the actions of the NIGC to date and to order pre-emptive declaratory and injunctive relief regarding possible enforcement action by the Department of Justice and the NIGC. Accordingly, it is this 27th of January, 2004, hereby **ORDERED**, that the

---

4. For the same reasons, even if the APA did provide a basis for judicial review under IGRA (which the Court has already determined it does not), the advisory letter of the General Counsel could not be considered a "final agency action for which there is no other adequate remedy in a court," and thus this action would not be subject to judicial review. 5 U.S.C. § 704; *see also Public Citizen v. Office of the U.S. Trade Representatives*, 970 F.2d 916, 921 (D.C.Cir.1992); *Alaska Legislative Council v. Babbitt*, 15 F.Supp.2d 19, 26 n. 8 (D.D.C.1998).

5. Plaintiff's request for a permanent injunction preventing in effect the Department of Justice from bringing an enforcement action is similarly an inappropriate pre-enforcement action. The Supreme Court has recognized that the "decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470

U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). The Attorney General has broad powers to conduct civil and criminal litigation, and the authority to make enforcement decisions "includes the power to make erroneous decisions as well as correct ones." *Swift & Co. v. United States*, 276 U.S. 311, 331–32, 48 S.Ct. 311, 72 L.Ed. 587 (1928). It is not the province of the judiciary to interfere with that exclusive decision-making process, and courts have long acknowledged, in both criminal and civil cases, the Attorney General's authority to control the course of the federal government's litigation is "presumptively immune from judicial review." *See Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C.Cir. 1995); *see also Newman v. United States*, 382 F.2d 479, 480 (D.C.Cir.1967) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made...").

defendant's motion to dismiss the plaintiff's action with prejudice [# 3] is **GRANTED**.